337 So.2d 283 (1976)
In re JONES.
No. 12978.
Court of Appeal of Louisiana, Second Circuit.
August 31, 1976.
Rehearing Denied September 27, 1976.
Writ Refused December 8, 1976.
*284 J. Stacey Freeman, Shreveport, for opponent-appellant.
Francis M. Gowen, Jr., Shreveport, for petitioner-appellee.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied September 27, 1976.
HALL, Judge.
This is an adoption proceeding in which a stepfather seeks to adopt the minor child of his wife. The central issue presented on appeal is whether the natural father refused or failed to comply with a court order of support for a period of one year within the intent and meaning of LSA-R.S. 9:422.1, thereby making the father's consent to the adoption unnecessary. The Juvenile Court held that the father failed to comply with a court order of support without lawful justification, that his consent was not necessary, and that it was in the best interest of the child to grant the adoption. For reasons expressed in this opinion, which are in accord with the reasons given by the Juvenile Court, we affirm the judgment.
The parents of the child were divorced on March 27, 1972. The divorce judgment awarded custody of the child, then four years old, to the mother and ordered the father to pay to the mother support for the child in the amount of $100 per month. The father made the child support payments to the mother through October or November, 1972.
The mother married petitioner on September 29, 1972. In January, 1973, the father sent the mother a check for child support. The mother attempted to cash the check but it was returned marked insufficient funds. She made no further efforts to cash the check.
The evidence as to events transpiring between the father and the mother about this time is conflicting. The father testified the mother blocked attempts by him to see the child and told him she did not want and would not accept further child support payments. The mother denied she ever told the father she would not accept child support payments. The evidence establishes that the mother did advise the father's attorney that her new husband wanted to adopt the child. The attorney contacted the father and then advised the mother that the father opposed the adoption and would not consent to it.
In February or March, 1973, upon the advice of his attorney, the father opened a savings account in a local bank, initially depositing $300, the amount of child support due at that time. The account was opened in the name of the child or in the name of both the child and the father, the evidence being unclear as to the exact name of the account. Only the father, or his sister, under a general power of attorney, had the authority to make withdrawals from the account.
On March 19, 1973, the father's attorney wrote to the mother advising her that an account containing the child support funds had been set up at the bank. The letter stated: "If you would like to withdraw this money or know the balance of the account at any time, please contact this office and we will be glad to help you." On June 27, 1973, the attorney wrote another letter to the mother advising her that the balance in the account was $700 and that $100 would continue to be deposited each month "for your convenience."
After receipt of the first letter, the mother contacted the bank to verify that such an account had, in fact, been opened. She was advised by the bank that she could not make withdrawals. She never made any *285 request to the father or his attorney to withdraw the money or to have the child support paid in any other manner. The mother testified she was told by the father that the money would stay in the bank and could not be touched until the child was eighteen years of age.
The stepfather, a self-employed professional man, filed the petition for adoption in March, 1974. An opposition was filed on behalf of the father. While the adoption proceeding was pending, the father sent the mother $700 in December, 1974, as a Christmas present for the child, and $100 in July, 1975, as a birthday present. In January, 1975, the father's attorney wrote the mother advising her the current balance in the account was $2,532.13 and advising her "you have but to contact this office for payment in full from this account." Another letter was written by the attorney in April, 1975, to the same effect.
After the trial, the Juvenile Court found (1) the mother had committed no acts nor had she conducted herself in such a manner as would justify the father in withholding child support payments; (2) the funds in the bank account could only be withdrawn by the father or his sister who had a power of attorney; (3) the father's depositing of the funds in the savings account was not in substantial compliance with the court order and was without lawful justification; (4) that therefore the consent of the father is not necessary; and (5) it is in the best interest of the child that the adoption be granted. On appeal, the natural father argues principally that he was justified in establishing the bank account for the deposit of child support payments.
LSA-R.S. 9:422.1 provides that when (1) the spouse of the parent granted custody is seeking the adoption, and (2) the natural parent without custody has failed to comply with a court order of support for a one year period, the petition may be granted without the consent of the natural parent without custody. It is clear that in this case the natural father has failed to comply with the court order of support for more than one year. A judgment for child support is the property of the custodial parent. Coleman v. Coleman, 209 So.2d 801 (La.App. 2d Cir. 1968); Simon v. Calbert, 289 So.2d 567 (La.App. 3d Cir. 1974). The obligation of making child support payments may only be met by making payments to the custodial parent. Rodriguez v. Rodriguez, 245 So.2d 765 (La.App. 4th Cir. 1971).
The case of In re Salmon, 318 So.2d 897 (La.App. 2d Cir. 1975) is analogous to the instant case. In that case, the father purchased savings bonds in the name of himself and his child. He subsequently cashed the bonds himself. The court held that the purchase of savings bonds in the name of the father and his child did not comply with the support order. In the instant case, the father did not withdraw the money himself, but he had and still has the right to do so at any time. The funds never left the control of the father. The mother must be placed in control of the child support funds for compliance with the court order to exist.
The payments made by the father as Christmas and birthday gifts have no bearing on this petition, because the gifts were made after the petition was filed. It is established that even an offer to pay full arrearages after the petition is filed will not defeat the action. See In re Salmon, 318 So.2d 897 (La.App. 2d Cir. 1975). Christmas and birthday gifts made after the petition is filed certainly can be no more effective than belated payment of arrearages in child support. Likewise, the letters written to the mother by the father's attorney after the petition was filed are of no effect.
Since the father failed to comply with the court order, his consent is not necessary unless noncompliance was justified within the rule established by In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1968). In that case, the Supreme Court stated:
"The Legislature never intended by this provision to dispense with consent where *286 the legitimate parent shows that his failure to comply with the court order for support was for reasons beyond his control. It intended that consent be dispensed with only where the parent refuses to comply with the order or fails to comply with the order without justification."
The appellant lists a number of actions of the mother which he claims provide sufficient justification for noncompliance. Appellant claims the mother denied him visitation rights. The evidence supporting the claim is not persuasive, but even assuming its truth, the proper course of action was for the father to seek redress through the courts. A belief that visitation rights have been denied is not an adequate excuse for failure to pay child support. In re Moody, 201 So.2d 222 (La.App. 2d Cir. 1967).
The second claim by appellant is that the bank account as a method of payment is justified because the mother refused to accept child support. Appellant has only his own version of a conversation with the mother in support of his claim, and the evidence as a whole does not support it. The mother attempted to cash the last support check which appellant sent her, but it was returned marked insufficient funds. The mother inquired about withdrawal of the money from the account after it was opened, but found she had no control over it. The mother was not obligated to secure compliance with the court order by taking affirmative action through appellant's attorney to withdraw the funds. The letters written by the attorney prior to filing of the adoption petition were less than positive as to her right to withdraw the funds upon her request. Child support funds are the property of the mother, and substantial compliance requires that the mother be placed in control of the funds without further action on her part.
Finally, appellant argues that in addition to failure to comply with an order of support under LSA-R.S. 9:422.1, a protracted period of neglect by the parent should be a prerequisite to an adoption by a step-parent without consent of the natural parent. The statute does not so provide and this interpretation would defeat the intent of the legislature in enacting the statute. The trial judge found noncompliance without justification for a period of one year. He also found the adoption would be in the best interests of the child. Under LSA-R.S. 9:422.1, these findings are sufficient to grant the petition, and the findings are supported by the evidence.
The judgment of the trial court is affirmed, at appellant's cost.
Affirmed.